UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re: | ) Chapter 11 |
| | ) |
| DANIEL A. BULLARD | ) Case No. 06-30051 LMW |
| | ) |
| Debtor | ) July 5, 2006 |

DEBTOR'S PLAN OF REORGANIZATION

INTRODUCTION

Daniel A. Bullard, Debtor-in-Possession, proposes the following Plan of Reorganization to creditors pursuant to § 1121(a) of Chapter 11 of the United States Bankruptcy Code for the resolution of the Debtor's outstanding creditor claims. Reference should be made to the Disclosure Statement of even date, and any amendment thereto, ("the Disclosure Statement") which has been filed by the Debtor-in-Possession to provide adequate information to enable parties in interest to make an informed judgment about this Plan of Reorganization.

ARTICLE I

DEFINITIONS

For the purposes of the Plan of Reorganization (referred to hereinafter as "the Plan of Reorganization" or "the Plan"), unless otherwise provided herein, the following terms shall have the meanings set forth.  Unless otherwise indicated, the singular shall include the plural and capitalized terms shall at all times refer to terms as defined within this Article. A term used in the Plan which is not defined in the Plan but is used in the Bankruptcy Code shall have the meaning assigned to it in the Bankruptcy Code.

1. "Administrative Expense" means the costs and expenses of administration of Debtor's Chapter 11 case as, when, and to the extent Allowed by the Bankruptcy Court,

including, without limitation, the actual, necessary costs and expenses of preserving the Debtor's estate and of operating the business of the Debtor subsequent to the commencement of the Chapter 11 case and all allowances of compensation and reimbursements of costs and expenses under §§ 330 and 503(b)(3), (4), (5) and (6) of the Code or otherwise allowed by the Bankruptcy Court and any fees or charges assessed against the Debtor under § 1930, Title 28, United States Code.

     2. "Allowed" means with respect to a Claim one (a) which is listed on the Debtor's schedule of liabilities filed pursuant to § 521(1), as the same may have been or may be amended, other than a Claim scheduled as disputed, contingent or unliquidated, (b) proof of which has been filed with the Bankruptcy Court and with respect to which no objection to the allowance thereof has been interposed, or (c) as to which any objection has been determined or which has been otherwise allowed by Final Order.

     3. "Bankruptcy Code" or "the Code" means Title 11 of the United States Code, as the same is amended from time to time to the extent applicable to this case.

     4. "Bankruptcy Court" or "the Court" means the United States Bankruptcy Court for the District of Connecticut.

     5. "Bankruptcy Rules" or "the Rules" means the Federal Rules of Bankruptcy Procedure, as the same are amended from time to time to the extent applicable to this case.

     6. "Business Day" means any day other than a day on which banks are authorized to be closed under the laws of the State of Connecticut.

     7. "Claim" means any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, legal, equitable, secured, or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

8. "Claimant" means the holder of an Allowed Claim.

9. "Claims Bar Date" means July 3, 2006, the date by which claimants must file proofs of claim in accordance with the original notice of Chapter 11 proceeding served on creditors herein on March 9, 2006, by the Court.

10. "Confirmation" means the entry by the Bankruptcy Court of an order confirming this Plan in accordance with the provisions of § 1129 of the Bankruptcy Code.

11. "Conversion Date" means March 6, 2006, the date an order was entered converting this case to a proceeding under Chapter 11 of the Code.

12. "Creditors' Committee" means that committee appointed by the United States Trustee in the Chapter 11 case pursuant to § 1102 of the Bankruptcy Code. (No Creditors' Committee has been appointed by the United States Trustee in this case to the date of this Plan.)

13. "Debtor" or "Debtor-in-Possession" means Daniel A. Bullard.

14. "Disputed Claim" means any Claim to which an objection has been filed and which objection has not been determined by a Final Order.

15. "Estate" means the bankruptcy estate as defined in Section 541 of the Code created upon the filing of the original petition herein by the Debtor.

16. "Effective Date" means the date fifteen days after the date that an Order confirming this Plan becomes a Final Order, or the next Business Day thereafter if such date is not a Business Day.

17. "Final Order" means an order or a judgment which has not been stayed and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending.

18. "General Creditor" means the holder of an Unsecured Claim.

19. "Petition Date" means January 20, 2006, the date of filing of the voluntary petition under Title 11, United States Code, by the Debtor.

20. "Plan" or "Plan of Reorganization" means this Plan of Reorganization, including all exhibits, as modified or amended from time to time as and to the extent permitted herein or by the Bankruptcy Court.

21. "Priority Claim" means any Claim to the extent entitled to priority in payment under § 507(a)(3), (4), (5), (6), or (7) of the Code.

22. "Pro Rata" means, with respect to an amount of cash to be paid or distributed on a particular date to a class of Claimants on their Claims, a proportionate share of such cash in accordance with the ratio, as of such date, of the amount of the Claim of a Claimant in the indicated class to the aggregate of the amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class).

23. "Secured Claim," in accordance with § 506(a) of the Code, means that portion of an Allowed Claim that is equal to the value of the interest of the holder of the Secured Claim in the property of the Debtor securing the Secured Claim.

24. "Tax Claim" shall mean any Unsecured Claim entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

25. "Wage Claim" means any Claim entitled to payment under § 507(a)(3) of the Bankruptcy Code.

26. "Unsecured Claim" means any Claim which is not an Administrative Expense, a Secured Claim, a Priority Claim, or a Tax Claim.

## ARTICLE II

## ADMINISTRATIVE EXPENSES

Administrative Expenses shall be paid in such amounts as are Allowed by the Bankruptcy Court and shall be paid following allowance, in full, on the Effective Date of this Plan, or when an Order allowing such Expense becomes a Final Order, unless other terms of payment are agreed upon between the holder of such Administrative Expense and the Debtor. Administrative Expenses are not classified pursuant to § 1123(a)(1) and therefore have no right to accept or reject the Plan.

The Debtor anticipates that the total unpaid Administrative Expenses of the estate on the estimated date of Confirmation shall equal approximately $24,000. This estimate of Administrative Expenses is merely for working purposes only in aid of projecting payments under the Plan. The estimate of course is subject to adjustment in accordance with the determination of expenses actually incurred and Allowed, and any interim payments that may be Allowed and disbursed. The actual Administrative Expenses may be lower or higher in both itemized and total amount. The estimated expenses are itemized as follows:

    (1)  Court expenses and fees due to the Office of the United States Trustee, if any are outstanding at Confirmation. Debtor projects such fees shall be not more than $500;

    (2)  Attorney's fees as of Confirmation to Coan, Lewendon, Gulliver & Miltenberger, LLC, Chapter 11 counsel to the Debtor, estimated to be in the amount of twenty one thousand dollars ($21,000) after application of pre-conversion payments. (Subject to Court approval).

    (3)  Tax preparation and accounting fees to Yvette Larrieu that Debtor believes will total about $2,500. (Subject to Court approval).

Any current costs or expenses incurred by the Debtor in the ordinary course of his business and affairs and outstanding at the time of the Confirmation are assumed by the reorganized Debtor and shall be paid in the ordinary course. Fees and expenses of professionals incurred in aid of execution of this Plan after Confirmation shall be paid from the post-confirmation Debtor's funds without further approval of the Bankruptcy Court.

## ARTICLE III

## PRIORITY CLAIMS

Priority Claims include such Claims as consumer deposits, wages and contributions to employee benefit Plans. To the best of Debtor's knowledge, debtor owes no Priority Claims.

## ARTICLE IV

## TAX CLAIMS

Tax Claims include all Allowed Unsecured Claims of governmental entities within the definition of § 507(a)(8), excluding penalties not for actual pecuniary loss. The Internal Revenue Service ("IRS") is owed a Tax Claim in the estimated sum of $48,000 for unpaid personal income tax obligations arising in the 2003 and 2004 tax years.

The IRS Claim, and any other Tax Claims that may be proved and Allowed, shall be paid by the Debtor within three (3) years of the Effective Date or by the deadline set forth in §1129(a)(7)(C) of the Code, whichever is earlier, in monthly payments, divided among all Allowed Tax Claims Pro Rata, and amortized with interest on the outstanding principal balance at the rate applicable under nonbankruptcy law as of the month in which the Plan is confirmed, consistent with Section 511 of the Code, as amended, to the date of payment. The initial payment to Tax Claims shall be on the Effective Date and subsequent payments shall occur on the same day of each successive month thereafter. The monthly payment amount will be adjusted if necessary after the Claims Bar Date should Tax Claims be Allowed in a different amount from the amount scheduled or filed prior to the Effective Date. The Debtor reserves the right to accelerate payments at any time.

## ARTICLE V

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

All Claims against the Debtor of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from the rejection of executory contracts, if any, shall be bound by the provisions of this Plan and are hereby classified and described, **with approximate amounts as of the Petition Date**, unless otherwise indicated, as follows:

| | |
|---|---|
| Class 1 - NewAlliance Bank Business Loan | Claim secured by lien on certain accounts receivable as same is limited by Section 506 of the Code, up to the sum of about $88,388. |
| Class 2 - Sovereign Bank | Claim of about $15,617 secured by Debtor's 1999 BMW automobile. |

| | |
|---|---|
| <u>Class 3</u> - Dutch Wharf Boat Yard | Claim of $2,650 for boat storage fees secured by lien on Debtor's 1981 J30 Sailboat. |
| <u>Class 4</u> - New Alliance Bank Boat Loan | Claim of approximately $17,000 secured by a lien on Debtor's 1981 J30 Sailboat. |
| <u>Class 5</u> - General Creditors Convenience Class | Unsecured Claims owed about $7,700 or less each comprising eight (8) claims totaling approximately $33,500 in face amount, subject to change pursuant to Claims proven and Allowed. |
| <u>Class 6</u> - General Creditors | Unsecured Claims in excess of about $7,700 comprising eight (8) Claims totaling approximately $219,000 in amount, subject to change pursuant to Claims proven and Allowed. (Included within Class 6, is the balance of the New Alliance Claim referenced in Class 1 above, that is not secured by certain receivables. subject to the Claims filing and Allowance procedures. For purposes of estimation herein the unsecured portion is estimated at $53,000.) |
| <u>Class 7</u> - Equity | Claim of equity ownership held only by the individual Debtor, Daniel A. Bullard. |

## ARTICLE VI

### SPECIFICATION OF CLASSES OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE Plan

Classes 2 and 4, the Sovereign Bank car loan and the New Alliance Boat Loan, are current and are assumed by Debtor who shall maintain payments from future income. Classes 2 and 4 are not impaired as the Plan "leaves unaltered the legal, equitable and contractual rights" to which such claims entitle the Class 2 and 4 creditors. 11 U.S.C. §1124(1).

-8-

# ARTICLE VII

## TREATMENT OF CLASSES OF CLAIMS IMPAIRED UNDER THE PLAN

The following classes are impaired under the Plan and shall be treated as described below:

A. Class 1 composed of the Claim of New Alliance Bank to the extent secured by certain accounts receivable shall continue to receive the proceeds of said receivables which are paid directly to a New Alliance account. Debtor estimates the present value of said receivables is in the range of $25,000 to $44,000. The remaining unsecured outstanding balance due on the original note of approximately $88,000, will be treated among Class 6, General Creditors, subject to the timely filing and Allowance of a proof of claim. For purposes of the Plan Debtor estimates the secured portion at $35,000.

B. Class 3 comprising the secured claim of Dutch Wharf Boat Yard is in default and past due. Debtor has paid same from a withdrawal from his retirement accounts which under applicable law are otherwise excluded from the bankruptcy estate.

C. Class 5, the General Creditor Convenience Claims shall be paid a Pro Rata share of $3,350 within fifteen days of the Effective Date in full settlement of said claims.

D. Class 6, the General Unsecured Claims shall be paid in the aggregate a total of $24,840. Said sum will be disbursed in approximately equal monthly installments, divided Pro Rata among the Claims in the Class over a period of three (3) years from the Effective Date, without interest ("the repayment period"). Payments shall be made to each holder of an Allowed Unsecured Claim by disbursements of a Pro Rata share of $690 on the 15th day of the second full calendar month following the Effective Date and monthly for the duration of the repayment period. The Pro Rata amount paid each claimant will be adjusted if necessary, after the Claims Allowance procedures, should General Claims be Allowed in a

-9-

    different amount from the amount scheduled or filed prior to the Effective Date.

  E. Class 6 - The Equity Class, comprising in this individual Chapter 11 case the interest of Daniel A. Bullard, shall continue to hold title to assets of the bankruptcy estate.

Debtor reserves the right to accelerate payments hereunder without further penalty.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor has no contracts or leases that were executory as of the filing date. except for the loan agreements relating to Classes 2 and 4 which are assumed as set forth in Article VI above.

## ARTICLE IX

## PREFERENCES AND TRANSFERS

After careful review of Debtor's books and records, Debtor believes there were no potentially recoverable preferences or transfers herein under §§ 547, 548, or 544 of the Bankruptcy Code or any other applicable law.

## ARTICLE X

## MEANS OF EXECUTION

Debtor shall hold sufficient cash at the date of confirmation to make all payments required pursuant to the Plan on the Effective Date.

Debtor shall make payments on a monthly and quarterly basis to Tax Claims and General Creditors from the profits and proceeds of his insurance business.

The Debtor will continue to service the accounts whose company pays policy renewals to New Alliance Bank, Class 1 herein, and shall continue to take any actions

-10-

necessary to assure such proceeds as may be received will be paid into the appropriate New Alliance account as has been the practice between the Debtor and the bank. Debtor does not guarantee that the policies will be renewed or that particular sums will be paid upon the policies that constitute the bank's collateral and will act at all times in the best interest of the clients.

## ARTICLE XI

## CONDITIONS PRECEDENT TO IMPLEMENTATION OF Plan

The Debtor's implementation of this Plan is expressly conditioned on the Confirmation Order becoming a Final Order of the Court.

## ARTICLE XII

## OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS

The Debtor shall file objections to Claims, if any, no later than the date the Confirmation becomes a Final Order. If the Bankruptcy Code or Rules provide the right of any other party to file objections to claims, all such objections shall be filed prior to the commencement of the hearing on Confirmation. The Debtor may object to amended proofs or new Claims filed subsequent to the date of this Plan including any Claims arising from rejected contracts or leases, or by undersecured Claimants after liquidation of the Claimant's collateral, if any.

As to Disputed Claims, notwithstanding any other section of this Plan, the Debtor shall withhold from the cash to be distributed under the Plan to the class or classes that would include such Claims if Allowed, and shall reserve on his books, a sufficient amount to be distributed on account of such Claims, and on account of Claims, if any, remaining unliquidated at the date of disbursement to such class.

Distribution with respect to and on account of Claims to which any objection has been filed shall be made without interest, except as otherwise provided in the Code or by the terms of this Plan, when an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order or on the next date of distribution to other Claims in the same class, whichever is later. No holder of a Disputed Claim shall have any rights or interests in the monies reserved with respect to such Claim until such Disputed Claim shall become an Allowed Claim.

## ARTICLE XIII

## DISCHARGE OF INDEBTEDNESS AND VESTING OF PROPERTY

Except as otherwise provided in § 1141 of the Bankruptcy Code and in this Plan, and without limiting the discharge granted by said Section, the entry of an Order of Confirmation of this Plan shall effect the discharge of the Debtor from any debt or Claim of whatever nature that arose before the date of such Confirmation, including specifically but not limited to any and all liabilities arising from any mortgage secured by, or lien or other encumbrance on, the Estate assets or other property and any debt of a kind specified in § 502(f), (g), (h) or (i) of Title 11 of the United States Code, whether or not (i) a proof of claim based on such debt is filed or deemed filed under § 501 of said Title; (ii) such Claim is allowed under § 502 of such Title; or (iii) the holder of such Claim has accepted the Plan. As of Confirmation title to all property of the estate not specifically otherwise distributed pursuant to the Plan shall revest in the reorganized Debtor.

## ARTICLE XIV

## CRAMDOWN PROVISION

Notwithstanding the provisions of §510(a) of the Bankruptcy Code, if all of the applicable requirements of §1129(a) of the Bankruptcy Code, other than §1129(a)(8) thereof, are met with respect to the Plan, the Debtor requests that the Bankruptcy Court, confirm the Plan pursuant to §1129(b) if the Plan does not discriminate unfairly and is fair and equitable with respect to each class of Claims or interests that is impaired under, but has not accepted, the Plan.

## ARTICLE XV

## COMMITTEES

Except as specifically stated herein to the contrary, as of the Effective Date any and all committees then in existence shall terminate. No committees have been appointed herein to the date of this Plan.

## ARTICLE XVI

## PROVISIONS FOR MANAGEMENT AND PROFESSIONALS

As an individual Debtor-in-Possession, there are no officers or directors or voting trustees post-confirmation as those terms are used in Section 1129(a)(5) of the Code. The reorganized Debtor individually or through his professionals shall administer the duties under the Plan. The reorganized Debtor shall receive free and clear of claims any income not required for payments hereunder for the funding of living expenses, business expenses, the assumed and reaffirmed liabilities, and any other purposes.

**Professionals.**  The Debtor is authorized to hire such professionals as he deems necessary and advisable to assist in carrying out the provisions of this Plan.  Such

professionals shall bill the reorganized Debtor for post-confirmation services. Such billings shall become payable by Daniel A. Bullard without further court order.

## ARTICLE XVII

## GENERAL PROVISIONS

**Payment on Effective Date.**  No payments under this Plan will be made to Claimants until an Order confirming this Plan has become a Final Order and any other conditions precedent are fulfilled.

**Payment on Business Days.**  Whenever a distribution hereunder is required to be made on a day other than a Business Day, such distribution shall be made on the first Business Day immediately following, without interest.

**Uncollected Funds.**  With respect to any checks returned by the postal service, the Debtor will use his best efforts to obtain a current address. Any checks issued by the Debtor pursuant to the Plan that have not been cleared by Debtor's bank within 120 days of their issuance will be deemed void by Debtor and the proposed payee of such checks will receive no further disbursement under the Plan unless the Claimant thereafter notifies Debtor of a corrected address prior to the final disbursement under the Plan. Payments required by this Plan which would be in the amount of less than $5.00 shall be disbursed only at the discretion of the Debtor, and any such payments may be held until combined with subsequent disbursements to the same Claimant.

**Amendment of Plan.**  The Plan may be amended by the Debtor before or after the Confirmation as provided in §1127 of the Code, or as otherwise may be authorized by the Court.

**Effectuating Documents.**  On or before the Effective Date, the Debtor shall execute such documents as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan.

**Headings.**  Headings are included herein for convenience and are not intended to limit the content and meaning of the paragraphs thereunder.

**Severability.**  Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

**Successors and Assigns.**  The rights, benefits, and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such person or entity.

ARTICLE XVIII

RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of this case to the extent provided by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.  Without the intention to limit such jurisdiction the Court specifically shall maintain jurisdiction with respect to the following matters:

    a.    To enable the Estate to consummate any and all proceedings which it may bring whether prior to the entry of the Confirmation Order or subsequent thereto to set aside liens or encumbrances and to recover any preferences, transfers, assets or damages to which the Estate may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local laws.

b. To adjudicate all controversies concerning the classification or allowance of any Claim or interest including any valuation of security under Section 506 and Rule 3012 or validity, priority or extent of any lien under Section 522(f) or Rules 4003(d) and 7001(2) brought before the Court by the Debtor or any party in interest so authorized.

c. To hear and determine all Claims arising from avoided liens or other interests in property, the rejection of executory contracts, including leases, and to consummate the rejection and termination thereof with respect to any executory contract as to which an application for rejection or termination is filed prior to the Effective Date.

d. To liquidate damages in connection with any disputed, contingent, or unliquidated Claims.

e. To adjudicate all Claims as to a security or ownership interest in any property of the Debtor or in any proceeds thereof.

f. To enter any orders including injunctions to enforce the title, rights and powers of the Debtor.

g. To adjudicate all claims or controversies arising out of any contracts for purchase and sale, or any financing or refinancing made or undertaken by the Debtor during the pendency of the within Chapter 11 case or, with respect to any Estate assets during the period of consummation of this Plan.

-16-

h.  To fix the allowance of compensation to all professionals for periods prior to Confirmation and to hear any disputes arising in connection with professional fees billed to the Estate thereafter.

i.  To modify this Plan after Confirmation to the extent required by the Code, to correct any defect, to cure any omission or reconcile any inconsistency in this Plan or the order confirming same as may be necessary to carry out the purposes and intent of this Plan and to enter any order reasonably necessary to enforce and interpret the terms and conditions of this Plan.

j.  To determine such other matters for which provision is made in the order confirming the Plan and for the purposes set forth in § 1127(b) of the Bankruptcy Code; and to make such orders as are necessary or appropriate to carry out the provisions of this Plan including, but not limited to, orders interpreting, clarifying, or enforcing the provisions hereof.

The Debtor may apply to the Court for a final decree herein at any time after the Effective Date and after an initial payment hereunder has been made.

Dated at New Haven, Connecticut, this 5th day of July 2006.

                /s/ Daniel A. Bullard
                Daniel A. Bullard

Counsel to Debtor:

Carl T. Gulliver, Esq.
Federal Bar No. ct00944
Coan, Lewendon, Gulliver & Miltenberger, LLC
495 Orange Street
New Haven, CT  06511
(203) 624-4756
(203) 865-3673 FAX
cgulliver@coanlewendon.com