UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                                    )
IN RE:                                              )    CASE NO.        06-30051 (LMW)
                                                    )
   DANIEL A. BULLARD,                               )    CHAPTER          11
                                                    )
              DEBTOR.                               )    DOC. I.D. NO.    77
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -)

## APPEARANCES

| | |
|---|---|
| Carl T. Gulliver, Esq. | Attorney for the Debtor |
| Coan, Lewendon, Gulliver & | |
|  Miltenberger LLC | |
| 495 Orange Street | |
| New Haven, CT 06511 | |
| | |
| Holley L. Claiborn, Esq. | Attorney for the United States Trustee |
| Office of the United States Trustee | |
| One Century Tower | |
| 265 Church Street, Suite 1103 | |
| New Haven, CT 06510 | |

**MEMORANDUM OF DECISION RE: SATISFACTION OF 11 U.S.C. § 1129(b)(2)(B)(ii)**

Lorraine Murphy Weil, United States Bankruptcy Judge

      The matter before the court is confirmation of the above-referenced debtor's (the "Debtor") First Amended Plan of Reorganization (Doc. I.D. No. 77, the "Plan").[1] The court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of the District Court (Daly, C.J.).[2] This memorandum constitutes the

---

      [1] References herein to the docket of this case appear in the following form: "Doc. I.D. No. ____."

      [2] That order referred to the "Bankruptcy Judges for this District" "all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C. . . . ."

findings of fact and conclusions of law mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (made applicable herein by Rule 9014 of the Federal Rules of Bankruptcy Procedure).

## I.    BACKGROUND

This case was commenced as a chapter 7 case on January 20, 2006.[3] The Debtor filed a full set of schedules and a Statement of Financial Affairs with his chapter 7 petition. (*See* Doc. I.D. No. 1, collectively, the "Original Schedules.")[4] The Debtor filed a motion to convert the case to a chapter 11 reorganization on February 28, 2006 (*see* Doc. I.D. No. 15) and an order so converting the case was issued on March 6, 2006 (*see* Doc. I.D. No. 19).

The Debtor filed the First Amended Disclosure Statement and the Plan on August 15, 2006. (*See* Doc. I.D. Nos. 76, 77.) The referenced disclosure statement was approved by an order issued on August 24, 2006. (*See* Doc. I.D. No. 85.) The Plan provides for seven classes of "creditors": four classes of secured creditors; two classes of unsecured creditors and an "equity" class composed of the Debtor himself. Class 5 is a "convenience class" of unsecured creditors. Class 6 is the balance of the class of general unsecured creditors. (*See* Doc. I.D. No. 77).[5] The Plan proposes to treat Class 5 and 6 as follows: Class 5 creditors are to receive their pro rata share of $3,350.00 (about a 10% dividend); Class 6 creditors are to receive their pro rata share of $24,840.00 over three years (about

---

[3]    Accordingly, the amendments to the Bankruptcy Code effectuated by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") apply to this case.

[4]    The Original Schedules have been amended twice: once on January 27, 2006 (with service of the same on January 29, 2006) (s*ee* Doc. I.D. Nos. 11, 13) and again on October 30, 2006 (with service on the same date) (*see* Doc. I.D. Nos. 103, 104). No objection to the Original Schedules (as so amended, collectively, the "Amended Schedules") have been filed and the exemptions claimed therein are deemed effective. *See* Fed. R. Bankr. P. 4003(b).

[5]    Class 5 is comprised of approximately $33,500.00 in face amount of claims and Class 6 is comprised of approximately $208,895.00 in face amount of claims. (*See* Doc. I.D. No. 77 (Plan, Article V).)

an 11.9% dividend). The Plan contemplates that the Debtor would retain income (the "Postpetition Income") from his postpetition business activities,[6] an automobile (the "Automobile") acquired postpetition and assets (the "Exempt Assets") claimed as exempt pursuant to the Amended Schedules. (*See* Doc. I.D. No. 105 (Debtor's Support Brief) at 9.)[7]

The classes of secured creditors either voted in support of the Plan or were deemed to have so voted pursuant to Bankruptcy Code § 1126(f). (*See* Doc. I.D. No. 107 (Revised and Corrected Report on Ballots and Administrative Expenses).) Neither Class 5 nor 6 voted to accept the Plan. (*See id.*) No objections to Plan confirmation were filed. A hearing (the "Hearing") on Plan confirmation was held on October 11, 2006. The Debtor testified at the Hearing in support of Plan confirmation.

At the conclusion of the Hearing, the court concluded that all requirements for Plan confirmation had been satisfied pursuant to Bankruptcy Code § 1129(a) except for Section 1129(a)(8) (because there were two nonaccepting impaired classes). The court took under advisement whether the Debtor could "cram down" Classes 5 and 6 under Section 1129(b)(2)(B) and requested the Debtor's counsel to brief the issue.[8] That brief has been submitted and the matter is ripe for decision.

---

[6] The Debtor is an independent life insurance agent. (*See* Doc. I.D. No. 76 at 4.)

[7] Under the circumstances present here, neither the nature nor the value of the personal property comprising the Exempt Assets suggest that the Debtor is not in good faith with respect to the Plan.

[8] Unlike Section 1129(a)(15) which is triggered only if a creditor objects to plan confirmation, Section 1129(b) requires a court to find compliance therewith even if a nonaccepting class of impaired creditors does not object to plan confirmation.

## II.   ANALYSIS

The "absolute priority rule" long has been one of the bedrock principles of reorganization law. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197 (1988). With respect to a class of unsecured creditors, the "absolute priority rule" now is codified at Section 1129(b)(2)(B). Under Section 1129(b)(2)(B) (as amended by BAPCPA), if at least one class of impaired creditors has accepted the proposed plan, that plan can be confirmed notwithstanding the failure of an impaired class of unsecured creditors to accept the plan if:

> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of [Section 1129] . . . .

11 U.S.C.A. § 1129(b)(2)(B) (West 2007). The Plan does not propose to treat Classes 5 or 6 in accordance with Section 1129(b)(2)(B)(i). Accordingly, the Plan can be confirmed only if Section 1129(b)(2)(B)(ii) is satisfied.

### A.   Section 1115

A stated exception (added to Section 1129(b)(2)(B)(ii) by BAPCPA, the "BAPCPA Exception") to the general rule of Section 1129(b)(2)(B)(ii) is that "in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of [Section 1129]."[9] Section 1115 provides in relevant part as follows:

---

[9]   Section 1129(a)(14) requires a debtor to be current on his postpetition domestic support obligations and is not at issue here.

> (a) In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541—
>
>> (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and
>
>> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

11 U.S.C.A. § 1115(a) (West 2007).

The court finds and/or concludes that the Postpetition Income and the Automobile are within the purview of Section 1115(a) and that the Debtor's retention of the same is not an impediment to Plan confirmation under Section 1129(b)(2)(B)(ii).

**B.    The Exempt Property**

At the Hearing, the Debtor's counsel suggested that the BAPCPA Exception constituted a waiver of the "absolute priority rule" in its entirety for chapter 11 cases of individuals and, in light of that waiver, the Debtor's retention of the Exempt Property was not a bar to confirmation under Section 1129(b).[10] The Debtor now has abandoned that position and relies instead on the proposition

---

[10]    At least one commentator has so suggested:

> The absolute priority requirements imposed by Code 1129(b)(2)(B)(ii) were waived by permitting a debtor to retain property included in the estate under 1115. Although 1115 was added by the 2005 Amendments to include post-petition property and earnings, it also incorporates property of the estate under 541, and accordingly it is assumed that the debtor shall be entitled to retain property under 541 as well. A more narrow interpretation would cause this amendment to have little effect.

4 William L. Norton, Jr., *Norton Bankruptcy Law and Practice* § 84A:1 (2d ed. 2006). The court expresses no opinion on that point. *But compare* 11 U.S.C. §§ 1129(a)(15), 1129(b)(2)(B)(ii) (post BAPCPA versions) *with In re Flor,* 166 B.R. 512 (Bankr. D. Conn. 1994), *aff'd,* No. 3:94CV1130, slip. op. (D. Conn. March 24, 1995), *appeal dismissed,* 79 F.3d 281 (2d Cir. 1996) (In a case to which BAPCPA did not apply, individual could not fund his chapter 11 plan with future personal services income.)

that Section 1129(b)(2)(B)(ii) permits a debtor to retain his exempt property and still confirm a plan under Section 1129(b)'s "cram-down" provisions. For the reasons discussed above, this court agrees.

There is disagreement among the cases concerning whether a chapter 11 debtor may retain his exempt property and still comply with Section 1129(b)(2)(B)(ii). Cases such as *In re Gosman,* 282 B.R. 45 (Bankr. S.D. Fla. 2002), hold that Section 1129(b)(2)(B)(ii)'s prohibition against the debtor's retention of "any property" means that the debtor cannot comply with that subsection if he retains his exempt property. *See Gosman*, 282 B.R. at 48-52. The better line of authority holds that the debtor's retention of his exempt property does not offend Section 1129(b)(2)(B)(ii) because such retention is not "on account of . . . [the debtor's] junior interest . . . " in property:

> Once the exemptions are allowed the properties are no longer part of the Debtor's estate, and the Debtor does not retain property on account of such interest because he retains it as a matter of right by virtue of recognition of his right to exemptions .
> . . .
>
> The ordinary meaning of the term "junior" means a claim or interest that is subordinate to other claims or interests which enjoy a higher rank. The word "junior" defined in Black's Law Dictionary, at p. 851 (6th Ed. 1990), as "[a] legal right which is subordinate to another's right as applied to property . . . " The same meaning of "junior" is applied throughout the entire Bankruptcy Code. It is clear that the Debtor's interest in exempt property can never be junior to the interest of creditor's [sic] including the claim of dissenting unsecured creditors. This is so because unsecured creditors could never reach exempt property outside of bankruptcy, and such properties are immune and not subject to liquidation under any of the operating Chapters of the Code.
>
> Section 522(c) of the Code provides, in pertinent part, " . . . property exempted under this Section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . . . " Giving unsecured creditors in a dissenting class veto power over a plan requiring exempt property to be given to such creditor's [sic], is an incorrect reading of the Bankruptcy Code.
> . . .
> While this result might be appalling in certain instances, the creditors are not without remedy. They could seek a denial of confirmation of a plan proposed by the

Debtor whose plan is an attempt to abuse the system by obtaining a denial of confirmation on the basis that the plan failed to comply with Section 1129(a), which requires confirmation of a plan that is proposed in good faith.

*In re Henderson,* 321 B.R. 550, 559-60 (Bankr. M.D. Fla. 2005), *aff'd,* 341 B.R. 783 (M.D. Fla. 2006).[11] This court approves and adopts the foregoing rationale. Accordingly, the court concludes that the Plan can be confirmed notwithstanding that the Debtor retains the Exempt Property.

### III.    CONCLUSION

For the foregoing reasons the court concludes that the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied. An order will enter confirming the Plan.

Dated: January 16, 2007                                    BY THE COURT

                                                            Lorraine Murphy Weil
                                                            United States Bankruptcy Judge

---

[11]    As a respected publication observed:

> When one examines the text of the statute, according to the *Gosman* court, "the core dispute . . . centers on whether the term 'any property' as used in Section 1129(b)(2)(B)(ii) encompasses property which is 'exempt property.'" To ask the question in this manner, of course, is to preordain the answer (by asking the wrong question) . . . .

*Absolute Priority and An Individual Chapter 11 Debtor's Exempt Property: Who is Junior to Whom?*, West Bankruptcy Law Letter (October 2002) (citation omitted). Moreover, the debtor does not receive or retain exempt property "under a plan" within the purview of Section 1129(b)(2)(B)(ii) but, rather, pursuant to Bankruptcy Code § 522.